NEWMEYER & DILLION LLP
J. NATHAN OWENS, CBN 198546
AMTOJ S. RANDHAWA, CBN 301360
895 Dove St., Fifth Floor
Newport Beach, California 92660
(949) 854-7000 / (949) 854-7099 (Fax)
Nathan.Owens@ndlf.com
Amtoj.Randhawa@ndlf.com

Attorneys for Plaintiff Creditor
STEPHEN CHEIKES, an individual; and
THE STORYTELLERS GROUP
ENTERPRISES CO., a Canadian corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CASE NO.: 2:18-BK-14672 |
| SHAMAN BAKSHI | **ADVERSARY COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§§§ 523(a)(2)(A), (a)(2)(B), a(4), and (a)(6)** |
| Debtor. | |
| STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation; | **[DEMAND FOR JURY TRIAL]** |
| Plaintiffs, | |
| v. | |
| SHAMAN BAKSHI, | |
| Defendant. | |

Plaintiffs, STEPHEN CHEIKES and THE STORYTELLERS GROUP

ENTERPRISE CO., a Canadian corporation (collectively referred to as

"Plaintiffs"), by and through their counsel of record, the law firm of Newmeyer &

Dillion LLP, file this Complaint under 11 U.S.C. §§§§523(a)(2)(A), a(2)(B), (a)(4),

and (a)(6) objecting to the dischargeability of a pre-petition debt owed by debtor

6915155.1

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

SHAMAN BAKSHI (hereafter referred to as "Defendant," "Debtor," or "Bakshi"), to Plaintiffs, and in support hereof alleges as follows:

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§157 and 1334, and 11 U.S.C. § 523.

2.      Venue in the Central District of California is proper under 28 U.S.C. § 1391(b) and (c).

3.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

4.      This Adversary Proceeding related to *In re Shaman Bakshi,* Case No. 2:18-BK-14672 (Bankr. C.D. Cal.)(Chapter 7), now pending in this Court ("Bankruptcy Case"). Plaintiffs are unsecured creditors with a claim against the Debtor in the amount of FIVE HUNDRED SIXTY-SEVEN THOUSAND ONE HUNDRED SIXTY-SEVEN DOLLARS ($567,167.00) pursuant to the judgment entered by the Orange County Superior Court of California in favor of Plaintiffs and against Debtor and Debtor's limited liability company, Fade to Black Entertainment, LLC, jointly and severally ("Judgment"), in the case styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al.*, Case No. 30-2013-00637770-CU-BC-CJC ("State Court Case").

## THE PARTIES

5.      Plaintiff Stephen Cheikes ("Cheikes") is an individual that now resides in Victoria, British Columbia, Canada.

6.      Plaintiff The Storytellers Group Enterprises Co. ("TSGE") is, and at all times relevant hereto was, a Canadian corporation with its principal place of business located in British Columbia, Canada. Cheikes is the principal of TSGE.

7.      Plaintiffs are informed and believe that Defendant Shaman Bakshi was at all times relevant hereto, and currently is, a resident of the County of Los Angeles County in the State of California.

NEWMEYER & DILLION LLP

**COMMON ALLEGATIONS**

8. In or about October 2010, Bakshi began soliciting Plaintiffs to participate in a financing opportunity that involved the issuance of a Standby Letter of Credit ("SBLC"). Plaintiffs were asked to place monies into escrow that would be used to finance the processing costs for the issuance of a SBLC in a substantially larger amount. The SBLC would be cash-backed by another party (Sabastian Anthonysamy) with whom Bakshi represented as having a substantial ongoing financial relationship with a major banking institution (HSBC UK Bank).

9. The SBLC would be issued by HSBC to North American Conveyor Corporation (NACC), which Bakshi represented held, at that time, several existing substantial lines of credit with HSBC. Upon the issuance of the SBLC, NACC would immediately draw down on one of its then existing lines of credit and distribute monies back to Plaintiffs in the form of a non-recourse loan in consideration for the initial monies put into escrow. The entire transaction was to take no more than three weeks to complete.

10. As part of Plaintiffs' due diligence on the proposed transaction, Bakshi introduced Plaintiffs to several other third parties whom he represented he had significant prior, successful business dealings with. Bakshi also represented that he had previously successfully completed several of these transactions with other investors and that the issuance by HSBC of the SBLC, cash-backed by Mr. Anthonysamy, was assured.

11. Plaintiffs were also introduced to Toni Hardstone, principal of Commercial Escrow Services, Inc. ("CES"), whom was represented to be the escrow company that would hold the escrowed monies until the SBLC was issued. Bakshi represented that he had substantial business dealings with Ms. Hardstone and CES on similarly described transactions and that all said transactions had been successfully handled without any problems.

12. To further entice Plaintiffs to invest in the financing scheme, Bakshi

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

executed personal and corporate guarantees, on behalf of himself and his limited liability company, Fade to Black Entertainment, LLC ("FBE"), respectively, for the full refund of the monies placed in escrow in the event that, for any reason, the SBLC was not issued.[1]  Bakshi also provided Plaintiffs with written agreements outlining and providing for each step of the transaction.

13.     Relying on the above representations, final agreements to memorialize the proposed financial transaction were negotiated between Plaintiffs and Bakshi.

14.     On or about March 1, 2011, in accordance with the terms of the agreements between the parties, Plaintiffs wire transferred €300,000 to CES to be held in escrow.  A portion of the escrowed monies were subsequently released to Bakshi and/or FBE even though the SBLC never issued.

15.     Despite Bakshi having no right, legal or otherwise, to the portion of the €300,000 that he received, Bakshi refused to return the monies to Plaintiffs or honor the personal and corporate guarantees he executed.

16.     Plaintiffs are informed and believe and on that basis allege that after the monies were released from the CES escrow—despite the SBLC never having been issued—Bakshi continued to actively conceal from Plaintiffs the fact that: 1) the transaction had failed, 2) the €300,000 has been released from escrow, 3) Bakshi (either individually or through his limited liability company) had received some portion of it, and 4) the transaction could not be completed.

17.     Plaintiffs are informed and believe and on that basis allege that Bakshi (either individually or through FBE) received some of the monies released from the CES escrow.

18.     Plaintiffs are informed and believe and on that basis allege that Bakshi was aware that he had not right to any of the monies he or FBE received and was aware that he was contractually obligated to refund €300,000 to Plaintiffs pursuant

NEWMEYER & DILLION LLP

---

[1] A true and correct copy of the personal and corporate guarantee executed by Bakshi on behalf of himself and his limited liability company, Fade to Black Entertainment, LLC, is attached hereto as Exhibit A ("Ex. A").

6915155.1                              - 4 -                    ADVERSARY COMPLAINT FOR
                                                               NONDISCHARGEABILITY OF DEBT

to the personal and corporate guarantees he executed.

19. Plaintiffs demanded that Bakshi refund the €300,000 deposited into escrow pursuant to the personal and corporate guarantees, but Bakshi failed and refused to do so.

## COURSE OF PROCEEDINGS

20. Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

21. As a result of Debtor's conduct, Plaintiffs filed a complaint against Bakshi, Fade To Black Entertainment, LLC (his limited liability company) and other culpable third parties on March 15, 2013 in the State Court Case alleging the following causes of action: breach of contract, conversion, fraud, and negligence.

22. On or about January 30, 2015, the court entered judgment in favor of Plaintiffs and against Bakshi and FBE in the amount of $567,167.00 ("Judgment").[2]

23. On or about May 11, 2017, Bakshi filed a Motion to Set Aside the Default Judgment and Dismiss the Action with Prejudice in the State Court Case ("Motion").

24. On or about September 5, 2017, the court held an evidentiary hearing on Bakshi's Motion. After considering Bakshi's Motion, Plaintiffs' Opposition, Bakshi's reply brief, and the evidence and testimony presented at the evidentiary hearing, the court denied Bakshi's Motion.

25. After exhausting all potential options to avoid paying Plaintiffs the money owed pursuant to the Judgment, Bakshi initiated the above-captioned bankruptcy proceeding.

/ / /

---

[2] A true and correct copy of the Judgment entered against Bakshi in the State Court Case is attached hereto as Exhibit B ("Ex. B").

NEWMEYER & DILLION LLP

6915155.1    - 5 -    ADVERSARY COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

## **FIRST CLAIM FOR RELIEF**

### **(Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(2)(A))**

26.   Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

27.   Debts for money, property, or services obtained by false pretenses, a false representation, or actual fraud are not dischargeable. 11 U.S.C. §523(a)(2)(A).

28.   The allegations set forth in this Complaint make clear that Debtor defrauded Plaintiffs by knowingly making false, material misrepresentations to Plaintiffs in furtherance of his attempt to defraud Plaintiffs of €300,000 and convert same for his own, personal use.

29.   Plaintiffs advised Debtor that they would not invest in any transaction—including depositing the €300,000 Debtor was requesting—unless any and all risk of loss was covered by Debtor.

30.   Fully aware of this fact, Debtor executed personal and corporate guarantees on behalf of himself and his limited liability company, FBE. The guarantees explicitly shifted any risk of loss from Plaintiffs to Debtor and promised a full refund of the €300,000 Plaintiffs would deposit into escrow if, for any reason, the SBLC was not issued.

31.   Debtor executed these guarantees with no intent, or ability, to repay Plaintiffs in the event the SBLC was not issued. Indeed, Debtor had knowledge of his financial inability to honor the guarantees but executed the guarantees nonetheless. Debtor understood that Plaintiffs would never invest in the transaction, or deposit the €300,000 into escrow, unless Debtor executed the guarantees.

32.   To further induce Plaintiffs to invest in the transaction and deposit the €300,000, Debtor made several misrepresentations regarding his involvement in

NEWMEYER & DILLION LLP

the transaction, his prior successes in similar transactions in the past, his prior business dealings with the other third parties involved in the transaction, and the overall efficacy of the proposed transaction.

33.    Plaintiff is informed and believes and thereupon alleges that Debtor made these misrepresentations while acting in concert with the other third parties involved in the proposed transaction to defraud Plaintiff of the €300,000 deposited into escrow with CES.

34.    Plaintiffs relied on these guarantees and Debtor's representations (regarding his prior financial successes, his prior dealings with the parties involved in the transaction, and his prior success with transactions identical to the one at issue, etc.) in agreeing to proceed with the transaction. As such, Plaintiffs wire transferred €300,000 to CES to be held in escrow or about March 1, 2011.

35.    As per the agreement between Plaintiffs, Debtor, and other third parties involved in the transaction, the escrowed monies were to be released only upon the SBLC being issued.

36.    Despite this agreement, a portion of the escrowed monies were released to Debtor and FBE even though the SBLC had not been issued.

37.    Upon learning this, Plaintiffs demanded that Debtor honor his personal guarantee, remit the portion of the monies he received to Plaintiffs, and immediately refund the €300,00 he had deposited.

38.    Debtor had no right, legal or otherwise, to the portion of the €300,000 that he received, yet Debtor refused to return the monies to Plaintiffs.

39.    Debtor further refused to honor the personal and corporate guarantees he executed promising to repay Plaintiffs €300,000 in the event the SBLC did not issue.

40.    The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

representations, and willful intention to harm Plaintiffs.

41. Consequently, Debtor's debt to Plaintiff pursuant to the Judgment is one for money, property, or services obtained by false representations or actual fraud, and is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### SECOND CLAIM FOR RELIEF

**(Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(2)(B))**

42. Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

43. Debts for money, property, or services obtained by use of a statement in writing are not dischargeable. 11 U.S.C. § 523(a)(2)(B).

44. Plaintiffs advised Debtor that they would not invest in any transaction—including depositing the €300,000 Debtor was requesting—unless any and all risk of loss was covered by Debtor.

45. Fully aware of this fact, Debtor executed personal and corporate guarantees on behalf of himself and his limited liability company, FBE. The guarantees explicitly shifted any risk of loss from Plaintiffs to Debtor and promised a full refund of the €300,000 Plaintiffs would deposit into escrow if, for any reason, the SBLC was not issued.

46. Debtor executed these guarantees with no intent, or ability, to repay Plaintiffs in the event the SBLC was not issued. Indeed, Debtor had knowledge of his financial inability to honor the guarantees but executed the guarantees nonetheless. Debtor understood that Plaintiffs would never invest in the transaction, or deposit the €300,000 into escrow, unless Debtor executed the guarantees.

47. To further induce Plaintiffs to invest in the transaction and deposit the €300,000, Debtor made several misrepresentations regarding his involvement in the transaction, his prior successes in similar transactions in the past, his prior

NEWMEYER & DILLION LLP

6915155.1     - 8 -     ADVERSARY COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

business dealings with the other third parties involved in the transaction, and the overall efficacy of the proposed transaction.

48. Plaintiff is informed and believes and thereupon alleges that Debtor made these misrepresentations while acting in concert with the other third parties involved in the proposed transaction to defraud Plaintiff of the €300,000 deposited into escrow with CES.

49. Plaintiffs relied on these guarantees and Debtor's representations (regarding his prior financial successes, his prior dealings with the parties involved in the transaction, and his prior success with transactions identical to the one at issue, etc.) in agreeing to proceed with the transaction. As such, Plaintiffs wire transferred €300,000 to CES to be held in escrow or about March 1, 2011.

50. As per the agreement between Plaintiffs, Debtor, and other third parties involved in the transaction, the escrowed monies were to be released only upon the SBLC being issued.

51. Despite this agreement, a portion of the escrowed monies were released to Debtor and FBE even though the SBLC had not been issued.

52. Upon learning this, Plaintiffs demanded that Debtor honor his personal guarantee, remit the portion of the monies he received to Plaintiffs, and immediately refund the €300,00 he had deposited.

53. Debtor had no right, legal or otherwise, to the portion of the €300,000 that he received, yet Debtor refused to return the monies to Plaintiffs.

54. Debtor further refused to honor the personal and corporate guarantees he executed promising to repay Plaintiffs €300,000 in the event the SBLC did not issue.

55. The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

56.    The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

57.    Consequently, Debtor's debt to Plaintiff pursuant to the Judgment is one for money, property, or services obtained by false representations or actual fraud, and is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## THIRD CLAIM FOR RELIEF

**(Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(4))**

58.    Debts for money obtained by fraud or defalcation while acting in in a fiduciary capacity, embezzlement, or larceny are not dischargeable. 11 U.S.C. § 523(a)(4).

59.    The allegations set forth in this Complaint make clear that Debtor defrauded Plaintiffs by knowingly making false, material misrepresentations to Plaintiffs in furtherance of his attempt to defraud Plaintiffs of €300,000 and convert same for his own, personal use.

60.    Plaintiffs advised Debtor that they would not invest in any transaction—including depositing the €300,000 Debtor was requesting—unless any and all risk of loss was covered by Debtor.

61.    Fully aware of this fact, Debtor executed personal and corporate guarantees on behalf of himself and his limited liability company, FBE. The guarantees explicitly shifted any risk of loss from Plaintiffs to Debtor and promised a full refund of the €300,000 Plaintiffs would deposit into escrow if, for any reason, the SBLC was not issued.

62.    Debtor executed these guarantees with no intent, or ability, to repay Plaintiffs in the event the SBLC was not issued. Indeed, Debtor had knowledge of his financial inability to honor the guarantees but executed the guarantees nonetheless. Debtor understood that Plaintiffs would never invest in the

NEWMEYER & DILLION LLP

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

transaction, or deposit the €300,000 into escrow, unless Debtor executed the guarantees.

63.    To further induce Plaintiffs to invest in the transaction and deposit the €300,000, Debtor made several misrepresentations regarding his involvement in the transaction, his prior successes in similar transactions in the past, his prior business dealings with the other third parties involved in the transaction, and the overall efficacy of the proposed transaction.

64.    Plaintiff is informed and believes and thereupon alleges that Debtor made these misrepresentations while acting in concert with the other third parties involved in the proposed transaction to defraud Plaintiff of the €300,000 deposited into escrow with CES.

65.    Plaintiffs relied on these guarantees and Debtor's representations (regarding his prior financial successes, his prior dealings with the parties involved in the transaction, and his prior success with transactions identical to the one at issue, etc.) in agreeing to proceed with the transaction. As such, Plaintiffs wire transferred €300,000 to CES to be held in escrow or about March 1, 2011.

66.    As per the agreement between Plaintiffs, Debtor, and other third parties involved in the transaction, the escrowed monies were to be released only upon the SBLC being issued.

67.    Despite this agreement, a portion of the escrowed monies were released to Debtor and FBE even though the SBLC had not been issued.

68.    Upon learning this, Plaintiffs demanded that Debtor honor his personal guarantee, remit the portion of the monies he received to Plaintiffs, and immediately refund the €300,00 he had deposited.

69.    Debtor had no right, legal or otherwise, to the portion of the €300,000 that he received, yet Debtor refused to return the monies to Plaintiffs. Instead, Debtor improperly converted the monies he received for his own, personal use.

70.    Debtor further refused to honor the personal and corporate guarantees

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

he executed promising to repay Plaintiffs €300,000 in the event the SBLC did not issue.

71.     The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

72.     Consequently, Debtor's debt to Plaintiff pursuant to the Judgment is one for money, property, or services obtained by false representations or actual fraud, and is not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## FOURTH CLAIM FOR RELIEF

### (Nondischargeability against Debtor Pursuant to 11 U.S.C. §523(a)(6))

73.     Plaintiffs repeat, reallege, and incorporate by this reference each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

74.     Debts for money obtained through the willful and malicious injury by the debtor to another entity or to the property of another entity are not dischargeable. 11 U.S.C. § 523(a)(6).

75.     Debtor willfully and maliciously injured Plaintiffs by knowingly making false representations and promises to convince Plaintiffs to investment monies Debtor knew he would convert for his personal use. These representations were material to Plaintiff's decision to contract with Debtor and invest €300,000 pursuant to the parties' agreement.

76.     Plaintiffs advised Debtor that they would not invest in any transaction—including depositing the €300,000 Debtor was requesting—unless any and all risk of loss was covered by Debtor.

77.     Fully aware of this fact, Debtor executed personal and corporate guarantees on behalf of himself and his limited liability company, FBE. The guarantees explicitly shifted any risk of loss from Plaintiffs to Debtor and

NEWMEYER & DILLION LLP

ADVERSARY COMPLAINT FOR
NONDISCHARGABILITY OF DEBT

promised a full refund of the €300,000 Plaintiffs would deposit into escrow if, for any reason, the SBLC was not issued.

78. Debtor executed these guarantees with no intent, or ability, to repay Plaintiffs in the event the SBLC was not issued. Indeed, Debtor had knowledge of his financial inability to honor the guarantees but executed the guarantees nonetheless. Debtor understood that Plaintiffs would never invest in the transaction, or deposit the €300,000 into escrow, unless Debtor executed the guarantees.

79. To further induce Plaintiffs to invest in the transaction and deposit the €300,000, Debtor made several misrepresentations regarding his involvement in the transaction, his prior successes in similar transactions in the past, his prior business dealings with the other third parties involved in the transaction, and the overall efficacy of the proposed transaction.

80. Plaintiff is informed and believes and thereupon alleges that Debtor made these misrepresentations while acting in concert with the other third parties involved in the proposed transaction to defraud Plaintiff of the €300,000 deposited into escrow with CES.

81. Plaintiffs relied on these guarantees and Debtor's representations (regarding his prior financial successes, his prior dealings with the parties involved in the transaction, and his prior success with transactions identical to the one at issue, etc.) in agreeing to proceed with the transaction. As such, Plaintiffs wire transferred €300,000 to CES to be held in escrow or about March 1, 2011.

82. As per the agreement between Plaintiffs, Debtor, and other third parties involved in the transaction, the escrowed monies were to be released only upon the SBLC being issued.

83. Despite this agreement, a portion of the escrowed monies were released to Debtor and FBE even though the SBLC had not been issued.

84. Upon learning this, Plaintiffs demanded that Debtor honor his personal

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

guarantee, remit the portion of the monies he received to Plaintiffs, and immediately refund the €300,00 he had deposited.

85.    Debtor had no right, legal or otherwise, to the portion of the €300,000 that he received, yet Debtor refused to return the monies to Plaintiffs.

86.    Debtor further refused to honor the personal and corporate guarantees he executed promising to repay Plaintiffs €300,000 in the event the SBLC did not issue.

87.    The Debtor's activities described in this Complaint were conducted with knowledge of the falsity of the representations made, knowledge of the fraudulent scheme described herein, reckless disregard of the truth or falsity of the representations, and willful intention to harm Plaintiffs.

88.    Debtor willfully and maliciously injured Plaintiff by refusing to repay Plaintiffs the money that had been obtained through Debtor's deception and fraud.

89.    Consequently, Debtor's debt is one for money obtained through the willful and malicious injury by the debtor to another entity or to the property of another entity and is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Debtor as follows:

1.    Judgment against Debtor determining that the $567,167 judgment in favor of Plaintiffs and against Debtor and FTB, jointly and severally, entered by the Orange County Superior Court of California, in the cast styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al.*, Case No. 30-2013-00637770-CU-BC-CJC, is not dischargeable in the instant Bankruptcy Case pursuant to 11 U.S.C. §523(a)(2)(A);

2.    Judgment against Debtor determining that the $567,167 judgment in favor of Plaintiffs and against Debtor and FTB, jointly and severally, entered by the Orange County Superior Court of California, in the cast styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al.*, Case No. 30-2013-

ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

NEWMEYER & DILLION LLP

00637770-CU-BC-CJC, is not dischargeable in the instant Bankruptcy Case pursuant to 11 U.S.C. §523(a)(2)(B);

3.    Judgment against Debtor determining that the $567,167 judgment in favor of Plaintiffs and against Debtor and FTB, jointly and severally, entered by the Orange County Superior Court of California, in the cast styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al.*, Case No. 30-2013-00637770-CU-BC-CJC, is not dischargeable in the instant Bankruptcy Case pursuant to 11 U.S.C. §523(a)(4);

4.    Judgment against Debtor determining that the $567,167 judgment in favor of Plaintiffs and against Debtor and FTB, jointly and severally, entered by the Orange County Superior Court of California, in the cast styled *The Storytellers Group Enterprises Co. et al. v. Shaman Bakshi et al.*, Case No. 30-2013-00637770-CU-BC-CJC, is not dischargeable in the instant Bankruptcy Case pursuant to 11 U.S.C. §523(a)(6);

5.    Plaintiffs be awarded their attorneys' fees and costs of suit incurred herein; and

6.    Plaintiffs be awarded any other and further relief this Court deems proper.

Dated: July 23, 2018                    NEWMEYER & DILLION LLP


By: */s/ Amtoj S. Randhawa*
J. Nathan Owens
Amtoj S. Randhawa
Attorneys for Petitioners/Plaintiffs
STEPHEN CHEIKES and THE
STORYTELLERS GROUP
ENTERPRISES CO.

6915155.1                    - 15 -                    ADVERSARY COMPLAINT FOR
NONDISCHARGEABILITY OF DEBT

# Exhibit A

### DISTRIBUTION OF PROCEEDS

### AND

### PERSONAL GUARANTEE

### AGREEMENT

**THIS AGREEMENT** dated February 23, 2011, by and between **THE STORYTELLERS GROUP ENTERPRISES COMPANY ("TSG")**, a Nova Scotia corporation with principal office located at 4497 Marine Drive, West Vancouver, B.C. V7W 2N8; and **STEPHEN CHEIKES ("Cheikes")**, an individual residing at 4497 Marine Drive, West Vancouver, B.C. V7W 2N8; and **CLIVE ASHWORTH ("Ashworth")**, an individual residing at 4491 Marine Drive, West Vancouver B.C. V7W 2N8; and **SHAMAN BAKSHI ("Bakshi")**, an individual residing at 600 S.  Spring Street, Suite 702, Los Angeles, California 90014.

**FOR GOOD AND VALUABLE CONSIDERATION GIVEN AND RECEIVED, THE PARTIES HERETO HEREBY AGREE AS FOLLOWS:**

1. **PROVISION OF OPPORTUNITY:** Bakshi has brought a financial opportunity ("Opportunity") to Cheikes pursuant to which investors can receive a substantial financial distribution in return for the establishment and subsequent payment of a cash deposit.
2. **CASH DEPOSIT:** Cheikes has arranged for the cash deposit required to consummate the Opportunity to be provided in equal parts by Cheikes and Ashworth. Cheikes and Ashworth shall contribute one-half (1/2) of the total required deposit amount ("Cash Deposit"), currently expected to be 300,000 Euros, as and when required to consummate the Opportunity.
3. **PERSONAL GUARANTEE:** Bakshi guarantees and insures TSG, Cheikes, and Ashworth from and against any and all losses, costs, fees, expenses, and/or liability claimed or proven, arising from the Transaction Agreements and from the deposit by TSG of any funds called for, needed, used, or otherwise required to further the intended completion of the Opportunity (currently intended to be 300,000 Euros). Any such loss, etc. will be reimbursed by Bakshi within 5 business days of the occurrence of any such loss.
4. **NOMINEE:** TSG, when named in the Transaction Agreements, shall be acting solely as the nominee party representing the equal and divisible interests of Cheikes and Ashworth. All right, title, interest, and obligations of TSG  in, to, and from the Transaction Agreements shall be those, in equal part, of Cheikes and Ashworth, subject to all of the terms and conditions expressed herein. Any liability, cost, or expense (not including the obligation of TSG to provide 300,000 Euros to fund bank processing costs and bank charges respecting the completion of the Opportunity) subsequently incurred by TSG arising from its action as

nominee in the Transaction Agreements shall be borne, in the first instance, in equal measure by Cheikes, Ashworth, and Bakshi. Nothing set forth in this paragraph, however, shall limit or reduce the liability of Bakshi to TSG, Cheikes, and Ashworth pursuant to Bakshi's guarantee made to each pursuant to Paragraph 3. above.

5. **DISTRIBUTION OF PROCEEDS:** The parties hereto acknowledge and agree that they intend and expect that upon completion of the Opportunity there shall be approximately 12,300,000 Euros to be distributed as provided in this Paragraph 5.

Any and all such proceeds derived by TSG from the consummation of the Opportunity shall be distributed upon receipt by TSG as follows, and in the priority set forth below:

   a. An amount equal to the Cash Deposit: one-half (1/2) to Cheikes; and one-half (1/2) to Ashworth; and

   b. The balance of any such proceeds: 37.5% each to Cheikes and Ashworth, and 25% to Bakshi.

6. **NATURE OF DISTRIBUTIONS:** The legal nature and form of any and all distributions made pursuant to Paragraph 5. above shall be, and be treated by each and every distributee of TSG, the same in nature and form as the distribution thereof to TSG. In other words, and for example only: monies distributed to TSG in the form of a non-recourse loan will be received by all distributees thereof as non-recourse loans from TSG's lender. Any change or subsequent modification in the nature or form of any such distribution (eg. the later release/forgiveness of such loan to TSG) will be deemed a simultaneous change or modification in the nature or form of the distribution made by TSG to Cheikes, Ashworth, and Bakshi, respectively.

7. **EXCLUSIVITY IN RE SUBSEQUENT OPPORTUNITIES:** The parties hereto hereby agree that only TSG, Cheikes, and Bakshi, shall have the right to negotiate and/or enter into financial opportunities hereafter separate from the specific Opportunity contemplated to be consummated pursuant to the hereindescribed Transaction Agreements with any person, firm, or corporation named in the Transaction Agreements, without the prior written consent of TSG, Cheikes, and Bakshi. TSG and Cheikes hereby agree with Bakshi that TSG and Cheikes shall not negotiate and/or enter into financial opportunities hereafter separate from the specific Opportunity contemplated to be consummated herein with any person, firm, or corporation named in the Transaction Agreements, without the prior written consent of Bakshi. TSG, Cheikes, and Bakshi hereby agree that, subsequent to the successful completion of the Opportunity, they will expeditiously use their good faith and best efforts to consummate subsequent financial transactions similar to the one contemplated herein.

8. **ENTIRE AGREEMENT:** The foregoing states the entire agreement the parties hereto with respect to the subject matter contained herein, and shall not be modified except in writing signed by the party to be charged.

*TSG, Cheikes, Ashworth,  Bakshi Agreement*
*February 23, 2011*
*Page 3.*

AGREED TO AND ACCEPTED BY:

_____

THE STORYTELLERS GROUP ENTERPRISES COMPANY
By: STEPHEN CHEIKES, PRESIDENT

_____

STEPHEN CHEIKES

_____

CLIVE ASHWORTH

_____

SHAMAN BAKSHI

# Exhibit B

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 01/30/2015                          TIME: 03:00:00 PM         DEPT:  C18

JUDICIAL OFFICER PRESIDING: William Claster
CLERK:  Gus Hernandez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  None

CASE NO: **30-2013-00637770-CU-BC-CJC**  CASE INIT.DATE: 03/15/2013
CASE TITLE: **The Storytellers Group Enterprises Co vs. Bakshi**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Breach of Contract/Warranty

EVENT ID/DOCUMENT ID: 72106207
**EVENT TYPE**: Under Submission Ruling

**APPEARANCES**

RE: DEFAULT PROVE-UP PACKAGE PURSUANT TO CCP § 585(d)

There are no appearances by any party.

The Court, having taken the above-entitled matter under submission on 01/30/2015 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Court finds judgment for plaintiff THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation; and STEPHEN CHEIKES, and against defendant SHAMAN BAKSHI; AND FADE TO BLACK ENTERTAINMENT, LLC, a California limited liability company, in the amount of $567, 167.00, as set forth in the Judgment signed and filed on 01/30/2015.

Court orders clerk to give notice.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700  W. Civic Center Drive
Santa Ana, CA  92702

**SHORT TITLE:** The Storytellers Group Enterprises Co vs. Bakshi

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:**<br>**30-2013-00637770-CU-BC-CJC** |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the Minute Order was mailed following
standard court practices in a sealed envelope with postage fully prepaid as indicated below.
The mailing and this certification occurred at Santa Ana, California on 02/04/2015

Clerk of the Court, by: _____ , Deputy

NEWMEYER & DILLION LLP
895  DOVE STREET # 5TH FLOOR
NEWPORT BEACH, CA 92660

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| NEWMEYER & DILLION LLP<br>J. NATHAN OWENS, CBN 198546<br>AMTOJ S. RANDHAWA, CBN 301360<br>895 Dove St., Fifth Floor<br>Newport Beach, California 92660<br>(949) 854-7000 / (949) 854-7099 (Fax)<br>Nathan.Owens@ndlf.com<br>Amtoj.Randhawa@ndlf.com<br><br>*Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** LOS ANGELES DIVISION

| In re:<br>SHAMAN BAKSHI<br><br><br><br><br>Debtor(s). | CASE NO.: 2:18-BK-14672<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| STEPHEN CHEIKES, an individual; and THE STORYTELLERS GROUP ENTERPRISES CO., a Canadian corporation<br><br><br>Plaintiff(s)<br>SHAMAN BAKSHI          Versus<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____ | **Address:** |
|---|---|
| **Time:** _____ | ☐  255 East Temple Street, Los Angeles, CA 90012 |
| **Courtroom:** _____ | ☐  3420 Twelfth Street, Riverside, CA 92501 |
| | ☐  411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐  1415 State Street, Santa Barbara, CA 93101 |
| | ☐  21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                Deputy Clerk

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2**. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>STEPHEN CHEIKES, an individual;<br>and THE STORYTELLERS GROUP ENTERPRISES CO.; a Canadian corporation; | DEFENDANTS<br>SHAMAN BAKSHI |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Amtoj S. Randhawa, CBN 301360  Tel.:(949) 854-7000<br>Newmeyer & Dillion LLP<br>985 Dove St., 5th Fl., Newport Beach, CA 92660 | ATTORNEYS (If Known)<br>Sandford L. Frey, CBN 117058<br>200 S. Los Robles Ave, Suite 210, Pasadena, CA 91101<br>Tel.:(626) 796-40000 |
| PARTY (Check One Box Only)<br>□ Debtor       □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☒ Debtor       □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

ADVERSARY COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§§§ 523(a)(2)(A), (a)(2)(B), a(4), and (a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- 1 ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- 2 ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- 3 ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought Plaintiffs are unsecured creditors with a claim against the Debtor in the amount of 567,167.00 pursuant to the judgment entered by the Orange County Superior Court. Debt owed to Plaintiff's is non-dischargeability of debt pursuant to 11 U.S.C. §§§§ 523(a)(2)(A), (a)(2)(B), a(4), and (a)(6)

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> Shaman Bakshi | BANKRUPTCY CASE NO.<br> 2:18-bk-14672 | |
| DISTRICT IN WHICH CASE IS PENDING<br> Central District | DIVISION OFFICE<br> Los Angeles | NAME OF JUDGE<br> Vincent P. Zurzolo |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.